1999 OK CIV APP 93

**Carol WALKER, Petitioner,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 1 OF TULSA COUNTY, OKLAHOMA, and the Workers Compensation Court, Respondents.**

**No. 92,751.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 13, 1999.

Susan Jones, Wilson Jones, Wilson Jones, P.C., Tulsa, Oklahoma, For Petitioner,

Lucia A. Lockwood, Rosenstein, Fist & Ringold, Tulsa, Oklahoma, For Respondents.

### OPINION

ADAMS, Judge:

¶1 By an order filed on August 10, 1998, the trial judge found Claimant Carol Walker was employed by Independent School District No. 1 of Tulsa County, Oklahoma (Employer) on August 10, 1995, when she "sustained accidental personal injury to the BACK, RIGHT HIP, LEFT HIP, LEFT LEG (KNEE), WITH CONSEQUENTIAL

AGGRAVATION OF PRE–EXISTING PSYCHOLOGICAL OVERLAY arising out of and in the course of [her] employment." The order determined Claimant sustained 13.5% permanent partial disability (PPD) to the body as a whole as a result of the back injury and 12.5% PPD to the left leg. Based on those findings, the trial judge awarded Claimant benefits for 85.25 weeks at the stipulated rate of compensation. The order also gave Employer credit for overpayment of temporary total disability benefits to be deducted from the latter end of Claimant's award and denied her request for continuing medical maintenance.

¶ 2 Claimant filed an *en banc* appeal. By a divided vote,[1] the three-judge panel entered the following order:

> After reviewing the record in this case, and being fully informed in the premises, [the panel] find[s] that parts of [the trial judge's order] were contrary to law AND against the clear weight of the evidence and hence the order of the Trial Judge heretofore entered in this case on AUGUST 10, 1998, should be and the same is hereby **AFFIRMED IN PART AND REMANDED IN PART AS FOLLOWS: REMANDED TO THE TRIAL JUDGE FOR DETERMINATION OF THE ACTUAL DATES WHEN THE CLAIMANT WAS TEMPORARILY TOTALLY DISABLED AND TO RULE ON CLAIMANT'S REQUEST FOR ADDITIONAL TEMPORARY TOTAL DISABILITY.**

1. One of the panel members dissented to one portion but concurred with the remainder of the order. Another panel member dissented to another portion of the order while concurring with the rest of the order, including the portion to which the first member dissented. Therefore, each portion of the order had the affirmative vote of at least two of the members of the panel.

2. This section provides:

   With respect to injuries occurring after [November 4, 1994], in case of disability, partial in character but permanent in quality, the compensation shall be seventy percent (70%) of the employee's average weekly wages, and shall be paid to the employee for the period prescribed by the following schedule:
   (1) For each percent of the first nine percent (9%) of disability, eighty percent (80%) of the

The order filed herein on AUGUST 10, 1998, as modified, shall remain in full force and effect as the order of this Court. (Emphasis in original).

¶ 3 Claimant filed an original review proceeding seeking to vacate the modified order. After asking the parties to address the issue, the Oklahoma Supreme Court concluded the remand order prevented review at that time and dismissed Claimant's proceeding. On the same date that the dismissal order was filed, the trial judge filed an order making specific findings concerning the dates on which Claimant was temporarily totally disabled and denied her request for additional temporary total disability benefits. Claimant did not file an *en banc* appeal but filed this proceeding asking us to vacate certain portions of the trial judge's orders.

## BENEFITS AWARDED

¶ 4 Claimant contends the trial judge improperly applied 85 O.S.Supp.1994 § 22(3)(b)[2] in computing her benefits. Given the trial judge's findings concerning the extent of disability to her leg and to the body as a whole as a result of the back injury, the trial judge must have applied the 20% reduction mandated by § 22(3)(b)(1) for the first 9% of disability separately to her leg and to her back. Because the injuries to both body parts arose out the same accident, Claimant contends the reduction should be applied only to benefits for the first 9% of the disability to one injured body part and should not be applied to the benefit attributable to the other body part.[3]

number of weeks of compensation provided by law prior to [November 4, 1994];
(2) For each percent of the next eleven percent (11%) of disability, the identical number of weeks of compensation provided by law prior to [November 4, 1994];
(3) For each percent of the next thirty percent (30%) of disability, one hundred twenty percent (120%) of the number of weeks of compensation provided by law prior to [November 4, 1994]; and
(4) For each remaining percent of disability, the identical number of weeks of compensation provided by law prior to [November 4, 1994].

3. Claimant contends in her brief that she is entitled to 94.25 weeks, 27.75 weeks due to the leg [ (.80)(.09)(250) + (.035)(250) ] and 67.5 weeks due to the back [ (.135)(500) ]. It is not apparent why Claimant does not claim entitlement to

¶ 5 This precise issue has been addressed previously by two different divisions of this Court, both of which concluded the provisions of § 22(3)(b) could not be applied separately to injuries to different body parts which arose out of the same accident. *Stice v. McDonnell Douglas*, 1997 OK CIV APP 11, 935 P.2d 1195, and *Sharitt v. American Airlines*, 1998 OK CIV APP 74, 962 P.2d 663.[4] Employer does not argue with the principles enunciated in those cases, but argues they do not apply here because Claimant made no attempt to combine these injuries in determining her disability.

¶ 6 This argument misses the point of these cases, particularly *Sharitt*. The essential question is whether the injury to different body parts arose from the same incident, not whether they were combined by the trial judge and converted to disability to the body as a whole. The trial judge erred in applying § 22(3)(b) to the benefits attributable to the leg and back injuries separately. The portion of the order determining the number of weeks of benefits to which Claimant is entitled is contrary to law and must be vacated, and on remand the trial judge must properly apply this section in accordance with the principle enunciated in *Sharitt*.

## TTD CREDITS

¶ 7 For unexplained reasons, Employer erroneously paid Claimant TTD benefits at double the stipulated rate for 31 weeks. Over Claimant's objection, the trial judge allowed Employer to claim a credit in the amount of the overpayment against the latter end of Claimant's PPD award. In addition, the trial judge allowed Employer a credit against the PPD award for TTD payments made for periods occurring after the date the trial judge found Claimant's TTD ended. Claimant argues the Workers' Compensation Court lacks statutory authority to allow such credits.[5]

¶ 8 Claimant bases her argument on the erroneous assumption that the Workers' Compensation Court can only allow credits against a PPD award as are specifically authorized by 85 O.S.Supp.1992 § 41.1.[6] This argument overlooks the long history such credits have in Oklahoma's workers' compensation jurisprudence and the effect the adoption of § 41.1 had on those cases. As early as 1922, in *Markham v. State Industrial Commission*, 85 Okl. 81, 205 P. 163 (1922), the Oklahoma Supreme Court held that an employer who paid an injured employee during a period of temporary total disability more than the benefit allowed by the statute could claim a credit for the overpayment against an award of PPD. *Markham* was followed in numerous subsequent cases, including *Mayo Hotel Co. v. Barney*, 185 Okl. 609, 95 P.2d 627 (1939), where the Court held that the employer would be entitled to a credit against PPD for TTD payments covering periods occurring after the date on which it was determined TTD ended and PPD began.

¶ 9 As first adopted in 1957, § 41.1 merely limited the extent of that credit by prohibiting payments of "salary or any other

120% of the benefit for her disability above the first 20% as allowed by § 22(3)(b)(3).

4. Both cases distinguished *Miller v. American Airlines*, 1996 OK CIV APP 15, 917 P.2d 479, which held that § 22(3)(b) could be applied to disability attributable to an injury occurring after November 4, 1994, despite the claimant's "previously adjudicated" 22% disability. As noted in *Stice* and *Sharitt, Miller* contains no indication that the "previously adjudicated" disability and the one involved there arose out of the same incident. For the same reason, *Sharitt* also appropriately distinguished the reasoning found in *Alhjouj v. Special Indemnity Fund*, 1997 OK CIV APP 68, 947 P.2d 1117.

5. Employer requested and the trial judge allowed other credit items for overpayment of TTD to which Claimant agreed. Claimant's argument appears to attack any credits. However, she may not be heard in this proceeding to object to credits to which she agreed on the record. Claimant's argument does not encompass the factual basis for the allowance of the credits. Therefore, we need not determine whether the trial court's order finding her TTD ceased on April 21, 1997, is supported by any competent evidence and whether there is factual support for the application of 85 O.S.Supp.1992 § 41.1(B).

6. Claimant recognizes that 85 O.S.Supp.1997 § 203(E) specifically allows such credits, but she correctly points out that it may not be applied here because it became effective November 1, 1997, well after the date of her injury. Employer does not argue that we should apply this statute.

remuneration" which was "paid in lieu of temporary total compensation" from being used as a credit against PPD by any "respondent or insurance carrier." Nothing in these provisions indicates any Legislative intent to disturb the previously existing case law which allowed credits for overpayments made for other reasons. Section 41.1 was amended in 1992 to make the original provisions subsection (A) and to add subsection (B). According to § 41.1(B), "[n]otwithstanding the provisions of subsection A," a "qualified individual self-insured employer" may claim a credit for TTD payments in excess of the statutory rate if the payments were made "without diminishing the employee's accrued leave" and were not made pursuant to "an applicable collective bargaining agreement."

¶ 10 Throughout the proceedings, the parties and the court treated Employer as "Own Risk," *i.e.*, as a self-insured employer, and Claimant never argued in the trial court that the overpayments based on the double rate were made pursuant to a collective bargaining agreement or resulted in a loss of her accrued leave. Therefore we can only conclude that a credit for the overpayments attributable to Employer's paying Claimant at double the stipulated rate was specifically authorized by § 41.1(B). The credit for overpayments attributable to periods occurring after the date on which the trial judge found Claimant's TTD ended was also appropriate under *Mayo Hotel*.

## CONTINUING MEDICAL

¶ 11 Claimant argues the record contains no competent evidence to support the trial judge's decision denying her request for continued medical treatment. We agree. Claimant presented unchallenged medical evidence that she continued to require prescription medications for her back and knee and the aggravated psychological overlay which the trial judge found were caused by her compensable injury. Employer presented no evidence directly relating to this issue, but argues Claimant's effective "abandonment" of treatment by her primary treating doctor authorizes this conclusion. Although the record is clear that Claimant was no longer seeing her treating doctor on a regular basis and had refused to consider additional treatment in the form of surgery, nevertheless, she testified that she continued to take pain medications previously prescribed by that physician and antidepressant medications prescribed by another physician. Moreover, her medical evidence demonstrated that she needed to continue on those medications to remain stable.

¶ 12 Employer's argument improperly equates the finding that TTD had ceased because Claimant had reached maximum medical improvement with a conclusion that continuing care was not necessary to maintain Claimant in a stable condition. The record contains no competent evidence refuting Claimant's unchallenged medical evidence that continuing medical care was necessary. The trial court's order denying that care must be vacated. *Parks v. Norman Municipal Hospital*, 1984 OK 53, 684 P.2d 548.

## CONCLUSION

¶ 13 The order of the Workers' Compensation Court is contrary to law insofar as it determined the amount of Claimant's benefit and lacks support of competent evidence insofar as it denied Claimant's request for continuing medical care. In those respects, the order is vacated. In all other respects, the order is neither contrary to law nor unsupported by competent evidence and is therefore sustained. The case is remanded to the Workers' Compensation Court with instructions to enter an order setting Claimant's benefit and authorizing continuing medical care in accordance with this opinion.

SUSTAINED IN PART, VACATED IN PART AND REMANDED

HANSEN, P.J., and JONES, C.J., concur.